**UNITED STATES of America,**
**Plaintiff,**

v.

**J. Timothy HALTER, Defendant.**

**No. 2:04–CR–189.**

United States District Court,
S.D. Ohio,
Eastern Division.

Nov. 29, 2005.

Deborah A. Solove, United States Attorney's Office, Columbus, OH, for Plaintiff.

Christopher Thomas Cicero, Columbus, OH, for Defendant.

## OPINION AND ORDER

SARGUS, District Judge.

This matter is before the Court on the Defendant's Motion to Dismiss the Indictment following the close of the Government's case-in-chief. For the reasons that follow, the motion (Doc. # 53) is denied.

### I.

Defendant, J. Timothy Halter ["Defendant"], was indicted on November 4, 2004. Count One charges him with the knowing possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2). Count Two of the Indictment charges the Defendant with forfeiture pursuant to 18 U.S.C. § 2353(a)(1) and (a)(3). The Defendant filed the instant motion to dismiss arguing that, as applied to him, 18 U.S.C. § 2252 is an unconstitutional exercise of Congress' authority under the Commerce Clause, U.S. CONST. Art. I § 8, cl.3.

The Defendant's motion was filed on the eve of trial, far outside the time set for such motions in the Court's prior scheduling Order. (*See Order*, 11/9/04, setting a motion cut-off date of 12/6/04). It was agreed prior to the start of trial that Defendant could raise the issue contained in his motion to dismiss in the context of a Rule 29 motion[1] at the close of the Government's case-in-chief. The motion was raised orally on November 16, 2005. The Court stated its ruling in open-court that day and further explains its reasoning by the instant *Opinion and Order*.

### II.

The statute at issue in this case provides that any person who:

(B) knowingly possesses 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if—

(i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

(ii) such visual depiction is of such conduct;

shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 2252(a)(4)(B).

As the United States points out in its written response to the Defendant's Motion to Dismiss, there are two ways to establish the jurisdictional requirement under § 2252(a)(4)(B). First, the Government can show that the depictions Defendant possessed were "mailed, shipped and transported in interstate commerce or foreign commerce." Second, the Government

---

1. Fed.R.Crim.P. 29(a) allows for Motion for a Judgment of Acquittal prior to submission of the case to the jury. The rule provides:

   **(a) Before Submission to the Jury**. After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.

   Fed.R.Crim.P. 29(a).

can show that the depictions were "produced using materials which have been mailed or so shipped or transported, by any means including by computer ...." 18 U.S.C. § 2252(a)(4)(B). The Government contends that "Defendant has been aware of the United States' intent to present evidence that the charged images themselves have traveled in interstate or foreign commerce ...." (*Response* at 3). During oral argument on the Defendant's Rule 29 motion, the United States represented that it relies exclusively on this first method for satisfying the jurisdictional element[2].

The Defendant asserts that § 2252(a)(4)(B) is unconstitutional as applied to him with respect to the Government's claim that the images themselves, not the actual zip disks or videos, traveled in interstate or international commerce. In support of his argument, Defendant initially relies on the Supreme Court's decision in *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).

In *Lopez,* the Supreme Court held that the Gun–Free School Zones Act, 18 U.S.C. § 922(q)[3], was an unconstitutional extension of Congress' power to regulate interstate commerce under Article I, § 8, cl.3 of the United States Constitution[4]. The Supreme Court reviewed the history of the application of the Commerce Clause and noted that there are "three broad categories of activity that Congress may regulate under its commerce power." 514 U.S. at 558, 115 S.Ct. 1624. First, Congress can regulate the use of the channels of interstate commerce; second, Congress can regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities; and third, Congress can regulate those activities which have "a substantial relation to interstate commerce." *Id.* at 558–59, 115 S.Ct. 1624. With regard to this third category, the Court held that the test is whether the regulated activity "substantially affects" interstate commerce. *Id.* at 559, 115 S.Ct. 1624.

In *Lopez,* the issue before the Supreme Court was whether § 922(q) satisfied this third category of permissible commerce clause regulation. The Court held that it did not. Section 922(q) contained "no express jurisdictional element which might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce." *Id.* at 560, 115 S.Ct. 1624. The Court noted that neither the statute nor the legislative history contained express findings by Congress of the effect on interstate commerce of the possession of a gun in a school zone.

---

**2.** The Defendant's written Motion to Dismiss references only the second method for satisfying the jurisdictional requirement under § 2252(a)(4)(B). According to the Defendant, the statute is unconstitutional to the extent it requires only that the charged items were possessed upon material (zip disks) that traveled in interstate commerce. In his written motion, Defendant argues that he is being prosecuted "based solely on intrastate possession of the charged items on one or more zip disks." (*Motion to Dismiss* at 2). The United States points out that this is not the basis on which it seeks to establish the jurisdictional

Commerce Clause link in this case. In light of this fact, the Court finds the argument raised by way of the Defendant's written motion to be of little significance.

**3.** The statute criminalized the knowing possession of a firearm in a school zone.

**4.** The Constitution delegates to Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with Indian Tribes." U.S. CONST. Art. I, § 8, cl. 3.

To uphold the Government's contentions here, we would have to pile inference upon inference in a manner that would bid fair to convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States. Admittedly, some of our prior cases have taken long steps down that road, giving great deference to congressional action.... The broad language in these opinions has suggested the possibility of additional expansion, but we decline here to proceed any further. To do so would require us to conclude that the Constitution's enumeration of powers does not presuppose something not enumerated, ... and that there never will be a distinction between what is truly national and what is truly local .... This we are unwilling to do. *Id.* at 565, 115 S.Ct. 1624 (internal citations omitted).

In sharp contrast to the statute at issue in *Lopez*, 18 U.S.C. § 2252(a)(4)(B) contains an express requirement that the visual depictions have been either "mailed ... shipped or transported in interstate or foreign commerce," *or* were "produced using materials which have been mailed or so shipped or transported, by any means including by computer ...." This statute does not permit jurisdiction based upon an inference from an inference. Instead, an actual showing of interstate asportation is an element of proof imposed upon the Government.

From this, the Court finds that Congress, in enacting § 2252(a)(4)(B), has reg-ulated only materials actually in interstate commerce[5]. Even if this conclusion were not reached, the Court also finds that the activities prohibited by § 2252(a)(4)(B), as applied in this case, affect interstate commerce.

In reaching this second conclusion, the Court first considers the four factors outlined by the Supreme Court in *United States v. Morrison,* 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000) as to whether a given activity substantially affects interstate commerce. In particular, the Court considers: (1) whether the statute relates to an activity that has something to do "with commerce or any sort of economic enterprise, however broadly one might define those terms;" (2) whether the statute contains an "express jurisdictional element which might limit its reach" to those activities having "an explicit connection with or effect on interstate commerce;" (3) whether congressional findings in the statute or legislative history support a judgment that the activity in question has a substantial effect on interstate commerce; and (4) whether the link between the activity and a substantial effect on interstate commerce is attenuated. 529 U.S. at 610–13, 120 S.Ct. 1740.

In applying these factors, the Court first finds that § 2252(a)(4)(B), in a broad sense, relates to activity that is economic in nature. In criminalizing the production and possession of child pornography, Congress found that an extensive commercial market exists in this regard[6]. In *United*

---

**5.** In so finding, the Court is aware that in *United States v. Corp,* 236 F.3d 325 (6th Cir. 2001), the same statute was found to have been unconstitutionally applied. It is beyond dispute that an otherwise constitutional statute can be stretched beyond the constitutional authority granted to Congress. As noted in *Corp,* the Court did not declare the statute facially unconstitutional. *See* page 8, *infra.*

**6.** As the Sixth Circuit noted in *United States v. Corp.* 236 F.3d 325, 332 n. 10 (6th Cir.2001) (internal quotations omitted) "Congressional findings described child pornography as a highly organized activity operating on a nationwide scale, involving large numbers of runaway and homeless (exploited) youth ... in the production and distribution of pornographic materials."

*States v. Kallestad,* 236 F.3d 225, 228 (5th Cir.2000), the Fifth Circuit found that § 2252(a)(4)(B) meets the first *Morrison* factor noting that child pornography can be exchanged through the mail and can become the basis for commercial child pornography magazines. The court relied on the finding cited in the 1986 Attorney General's Commission on Pornography that the "interstate traffic in child pornography 'involves photographs taken by child abusers themselves, and then either kept or informally distributed to other child abusers.'" *Id.* at 228, citing *Attorney General's Commission on Pornography: Final Report* 406 (U.S. Dep't of Justice, 1986) [7]. This Court has little difficulty finding that the statute at issue in this case has a broad relation to an economic enterprise, satisfying the first *Morrison* factor.

As to the second factor, as noted *supra,* § 2252(a)(4)(B) contains an express jurisdictional element. The statute prohibits the possession of child pornographic material that has "been mailed, or has been shipped or transported in interstate or foreign commerce" or which was "produced using materials which have been mailed or so shipped or transported, by any means including by computer . . . ." The fact that the statute has a jurisdictional element does not alone render it constitutional. *See United States v. Kallestad,* 236 F.3d 225, 229 (5th Cir.2000). Indeed, the Sixth Circuit has held § 2252(a)(4)(B) unconstitutional as applied to a Defendant in *United States v. Corp,* 236 F.3d 325 (6th Cir. 2001).

In *Corp,* the Defendant, a resident of the State of Michigan, was charged with possession of child pornography under § 2252(a)(4)(B) with respect to photographs he took of two females, one his adult wife and the other a seventeen year old. The photos showed the women engaging in sexual activity and, according to the minor female, the conduct was voluntary. There was no allegation that Defendant Corp distributed the photos to anyone. The Defendant was prosecuted under § 2252(a)(4)(B) and with an interstate nexus alleged on the basis that the photographic paper was produced outside the State of Michigan.

The Sixth Circuit held that, while § 2252(a)(4)(B) is facially constitutional, it was unconstitutional as applied to Corp. According to the Sixth Circuit, the Defendant's activity was "not of a type demonstrated *substantially* to be connected or related to interstate commerce. . . ." 236 F.3d at 332 (emphasis in original). Important in the Court's analysis were the facts that Defendant had not distributed or shared the pictures with anyone and the female minor was allegedly not "an 'exploited child' nor a victim in any real and practical sense." *Id.* The Sixth Circuit noted that this issue is fact-specific and set forth the following questions for courts to consider in assessing the constitutionality of the statute as applied:

> Was the activity in this case related to explicit and graphic pictures of children engaged in sexual activity, particularly children of about fourteen years of age or under, for commercial or exploitive purposes? Were there multiple children so pictured? Were the children otherwise sexually abused? Was there a record that defendant repeatedly engaged in such conduct or other sexually abusive conduct with children? Did defendant move from place to place, or state to state, and repeatedly engage in production of such pictures of children?

*Id.* at 333.

In considering these questions, the Court has little difficulty concluding that

---

7. Indeed, the evidence adduced by the Government in this case confirms this finding.

the facts in this case are far different from those presented in *United States v. Corp* [8]. First, Defendant Halter was in possession of various images, including videos, of children in quite graphic and abusive sexual poses. The pictures also included adults engaging in sexual activity with very young, pre-pubescent children. According to the testimony presented at trial, the children were all under the age of fourteen at the time of the pictures. These children are clearly victims and no question of consent or voluntary acquiescence by children of such age can be reasonably argued. Although there is no evidence that Defendant himself produced the images, as he is charged only with possession, the Government presented direct, corroborated, and uncontradicted evidence that the images and two videos depicting children in sexually explicit conduct were transported in interstate and foreign commerce. Given the exploitive nature of the images and the age of the children and the fact that it is claimed that Defendant came to possess the same by virtue of their movement through commerce, the Court concludes that the holding in *Corp* does not apply to this case.

As for the third *Morrison* factor, Congressional findings clearly support a conclusion that the activity in question has a substantial effect on interstate commerce. In 1977, through the original passage of the Protection of Children Against Sexual Exploitation Act of 1977, codified at 18 U.S.C. § 2251, *et seq.*, Congress recognized that child pornography constitutes "a large industry—representing millions of dollars in annual revenue—that operates on a nationwide scale and relies heavily on the use of the mails and other instrumentalities of interstate and foreign commerce." S.Rep. No. 95–438, 1978 U.S.C.C.A.N. 40, 44. As the Fifth Circuit has observed, "child pornography is a growing, predatory business that exploits and injures the most vulnerable among us." *United States v. Kallestad*, 236 F.3d at 229. Indeed, as shown by the evidence in this case, images taken nearly thirty years ago remain in the market of child pornography.

Finally, the last *Morrison* factor requires consideration of whether there is only an attenuated link between the activity and interstate commerce. The Court finds that the link is not at all attenuated. As demonstrated by the facts in this case and, as found by Congress, there is a market for child pornography and the market exploits children in all states and across the world. Again, as the Fifth Circuit aptly observed in *Kallestad*, "where the product is fungible, such that it is difficult if not impossible to trace, Congress can prohibit local possession in an effort to regulate product supply and de-

---

**8.** The Court notes that a subsequent panel of the Sixth Circuit was careful to limit the holding in *Corp* to that unique set of facts. In *United States v. Andrews*, 383 F.3d 374 (6th Cir.2004), the Defendant was charged with production, receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2251(b), 2252(a)(2) and 2252(a)(4)(B). The Sixth Circuit found the statute constitutional as applied and distinguished the facts in *Corp*. In particular, the court noted that Defendant Andrews had "forced two children aged 12 and under to watch sexually explicit photographs that presumably had been trans-mitted over interstate lines. He then compelled them to engage in sexually explicit behavior ...." *Id.* at 378. In addition, Andrews was in possession of several hundred sexually explicit photos of children who appeared to be under the age of twelve. The Sixth Circuit found that "[g]iven the scope of the evidence in the record, we have no doubt that the government established a sufficient nexus between the activity described in the first two counts of the indictment and interstate commerce to establish jurisdiction in this case." *Id.*

mand that thereby halt interstate trade." *Id.* at 231. Clearly, Congress' efforts to shut down the interstate and international market for child pornography so as to protect those who cannot protect themselves are an important function of the commerce power.

In sum, the Court finds that all four of the *Morrison* factors lead to the conclusion that § 2252(a)(4)(B) is a valid exercise of Congress' power to regulate interstate commerce as applied to the facts of this case. In the Court's view, the statute, § 2252(a)(4)(B), is constitutional both facially and as applied to Defendant Halter.

As a final matter, the Court notes that several of the images charged in this case originated in Great Britain and thus, moved in foreign commerce. Under Art. I, § 8 cl. 3 of the United States Constitution, Congress has the exclusive power to regulate the movement of goods or materials on an international basis. Federal law alone may regulate international commerce. In *Lopez,* the Supreme Court warned that an overly expansive interpretation of Congressional power to regulate *interstate* commerce would unconstitutionally infringe on the "general police power of the sort retained by the states." 514 U.S. at 565, 115 S.Ct. 1624. The concern for an appropriate federal-state balance, at the core of interstate commerce jurisprudence, is non-existent in the context of international commerce. The Supreme Court has long recognized that

> [t]he power to regulate commerce with foreign nations is expressly conferred upon Congress, and, being an enumerated power, is complete in itself, acknowledging no limitations other than those prescribed in the Constitution .... Whatever the difference of opinion, if any, may have existed or does exist concerning the limitations of the power, resulting from other provisions of the Con-

stitution, so far as interstate commerce is concerned, it is not to be doubted that from the beginning Congress has exercised a plenary power in respect to the exclusion of merchandise brought from foreign countries ....

*Buttfield v. Stranahan,* 192 U.S. 470, 492, 24 S.Ct. 349, 48 L.Ed. 525 (1904) (citations omitted).

As outlined above, 18 U.S.C. § 2252(a)(4)(B) encompasses the movement of child pornographic materials in foreign commerce. Since this is within Congress' exclusive authority to regulate, the Court has no doubt that the statute is constitutional as a valid exercise of Congressional International Commerce powers. In addition, the statute is constitutional as applied to Defendant Halter because several of the charged images moved in foreign commerce.

The Court also notes that in this case the jury was instructed to determine whether the United States had presented evidence sufficient to satisfy the requirement of § 2252(a)(4)(B) that the images moved in interstate or international commerce. For purposes of Rule 29, the Court concludes that the United States has met its burden in this regard. During its case-in-chief, the Government presented evidence that the fifty charged images were produced outside the State of Ohio. In particular, certain images were made in Great Britain, others in the State of Florida, and the remainder in the States of Illinois and Washington. The United States also presented evidence from which the jury could infer that the Defendant accessed the two charged videos via the Internet. The Court accepts the argument advanced by the United States that the demand for child pornography, including access to the same via the Internet, sustains a market for such items which in

turn substantially affects interstate commerce.

The jury found the Defendant guilty of violating 18 U.S.C. § 2252(a)(4)(B). The Court concludes that there was sufficient evidence for the jury to conclude that the charged images and videos moved in both interstate and foreign commerce for purposes of § 2252(a)(4)(B).

### III.

For the foregoing reasons, the Defendant's Second Motion to Dismiss the Indictment in this case (**Doc. # 53**) is **DENIED**.

**IT IS SO ORDERED.**