RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0029p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

          *v.*                                                    No. 08-2412

STEPHEN LEE BOWERS,
                    *Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 07-20208-001—Gerald E. Rosen, Chief District Judge.

Argued: January 21, 2010

Decided and Filed: February 8, 2010

Before: MERRITT, MOORE, and GIBBONS, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Matthew C. Brown, LAW OFFICE, Bloomfield Hills, Michigan, for Appellant.
Leonid Feller, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for
Appellee. **ON BRIEF:** Matthew C. Brown, LAW OFFICE, Bloomfield Hills, Michigan,
Timothy P. Flynn, KARLSTROM COONEY, Clarkston, Michigan, for Appellant. Leonid
Feller, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge. This case requires us to address the
continued viability of an as-applied Commerce Clause challenge to a child-pornography
conviction under 18 U.S.C. § 2251(a) and 18 U.S.C. § 2252(a)(4)(B), following the Supreme
Court's decision in *Gonzales v. Raich*, 545 U.S. 1 (2005). Because *Raich* makes clear that
if a "general regulatory statute bears a substantial relation to commerce, the *de minimis*
character of individual instances arising under that statute is of no consequence," *Raich*, 545

U.S. at 17 (internal quotation marks omitted), Defendant Stephen Lee Bowers's claim that his wholly intrastate, homemade child pornography falls outside the purview of congressional legislative power is meritless. In so holding, we now recognize explicitly that *United States v. Corp*, 236 F.3d 325 (6th Cir. 2001), is no longer the law of the Circuit. Bowers's additional challenge to the private-citizen search that uncovered incriminating evidence is also unavailing. We thus **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Defendant Stephen Lee Bowers was convicted by a jury of the sexual exploitation of a child in the manufacture of child pornography in violation of 18 U.S.C. § 2251(a) and the possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). The facts uncovered at trial, viewed in the light most favorable to the jury's verdict, reveal the following. At the time of his arrest, Bowers resided in a two-story house with a house mate, Titania Valdez. Bowers's bedroom was located on the first floor of the residence while Valdez's bedroom was on the second floor. They shared a kitchen, dining area, bathroom, and common room on the first floor of the house. While Bowers was away for several days on an out-of-town trip in April 2007, Valdez's boyfriend, William McDowell, entered Bowers's bedroom without having obtained Bowers's permission. While snooping, McDowell uncovered an album of what he believed to be child pornography on Bowers's dresser and showed the album to Valdez. Valdez then called her landlord, Rhonda Garza, who, in turn, called the FBI.

In response to Garza's call, two FBI agents, Agents Taube and Winterhalter, arrived at the house. Valdez invited the agents into the home. Agent Taube confirmed the living arrangements in the dwelling, and Valdez assured the agents that they were standing in a shared area of the home. Valdez then directed the agents to the dining room or kitchen table, which was also located within the shared area. Agent Taube immediately "observed [a] black binder" on the table, which Valdez indicated was the album in question. Taube Test., Hr'g Tr. of 9/10/07, at 29-30 (Doc. 63). The agents reviewed the album, confirmed that it likely contained child pornography, and obtained a search warrant for Bowers's bedroom. During the search, the agents uncovered additional pornographic material. The photographs that the agents uncovered in both the album and the subsequent search of Bowers's room

included sexual images of young girls both awake and as they slept. In some of the photographs, Bowers had staged the girls in sexual positions, and he appeared naked beside them and while touching them in a sexual manner. Police also uncovered photographs of children's faces, including his daughter, pasted on pornographic photographs of adults.

Following his arrest, Bowers waived his *Miranda* rights and admitted in a signed, written statement that he had taken the photographs in the album during an approximately two-year time period when he hosted sleep-over parties for his minor daughter and at least three of her minor friends. Haws Test., Trial Tr. of 6/18/08, at 201-05, 207 (Doc. 66). Bowers acknowledged that his daughter and her friends were ten- or twelve-years old at the time of the photographs and that he knew their ages when he took the photographs. *Id.* at 204, 207-08. Bowers stated that he "took photographs of these girls to include pictures of [him]self in their company naked." *Id.* at 208. According to law-enforcement testimony, Bowers admitted that he had shown the photographs to "lots of people," *id.* at 205, but there is no additional evidence in the record or in his written statement regarding his display of the images. There is no allegation that Bowers ever otherwise distributed the photographs or that any of the activity involved in the photographs took place outside the State of Michigan. The record does reflect that Bowers took the photographs with film that had traveled in interstate commerce.

Prior to trial, Bowers filed a motion to suppress the photograph album as the product of an unlawful search and a motion to dismiss the indictment based on the fact that his manufacture and possession of child pornography was noncommercial, wholly intrastate activity that the federal government was without jurisdiction to regulate. Following an evidentiary hearing, the district court denied the motion to suppress, concluding that the album was uncovered during a private search and that the search failed to implicate the Fourth Amendment. The district court also denied the motion to dismiss. Bowers proceeded to trial, and a jury found him guilty on both child-pornography counts. He timely appealed.

## II.  ANALYSIS

### A.  Private-Citizen Invasion Did Not Violate the Fourth Amendment

Bowers first argues on appeal that the district court erred in denying his motion to suppress because Valdez and McDowell were acting as instruments or agents of the government when they uncovered the incriminating photograph album.  Bowers reasons that because the invasion of his privacy would have been unlawful under the Fourth Amendment had the government agents actually conducted it, McDowell's action is itself unlawful.  Bowers also claims that the photograph album was not located on the table when the agents arrived but that Valdez and McDowell conducted a second private-citizen search when they retrieved the album from his bedroom for the agents.  We hold Bowers's argument unavailing because Valdez and McDowell never acted as instruments of the government and because law-enforcement officers did not otherwise conduct an unlawful search.

In reviewing the "denial of a motion to suppress, we review [the district court's] conclusions of law and application of the law to the facts . . . de novo."  *United States v. Hardin*, 539 F.3d 404, 416 (6th Cir. 2008) (internal quotation marks omitted).  We review a district court's factual findings for clear error.  *United States v. See*, 574 F.3d 309, 313 (6th Cir. 2009).

This Circuit uses a "two-factor analysis" in determining "whether a private party is acting as an agent of the government" such that the Fourth Amendment applies.  *Hardin*, 539 F.3d at 418.  Those two factors require an analysis of "(1) the government's knowledge or acquiescence" to the search, and "(2) the intent of the party performing the search."  *Id.* (internal quotation marks omitted).  If "*the intent of the private party* conducting the search *is entirely independent* of the government's intent to collect evidence for use in a criminal prosecution," then "the private party is not an agent of the government."  *Id.* (internal quotation marks omitted).

In the instant case, neither party contests the fact that law-enforcement agents were not present or involved in McDowell's initial discovery of the album.  The FBI gained knowledge of the incriminating evidence as a result of Garza's phone call, and it was only after that privately initiated phone call that the agents arrived at the residence and were

invited by a resident of the home to enter the dwelling and to view the previously privately discovered incriminating evidence. The Supreme Court has indicated that it is the moment of the "official invasion of the citizen's privacy" that is key to determining the reasonableness of that action. *United States v. Jacobsen*, 466 U.S. 109, 115 (1984); *see also Hardin*, 539 F.3d at 418-20. In this case, because it was wholly private action that first uncovered the album, with neither involvement by law enforcement nor an intent to aid law enforcement, Valdez and McDowell cannot be considered government agents at the time that the album was discovered initially.[1] *See Jacobsen*, 466 U.S. at 115 ("Whether those invasions were accidental or deliberate, and whether they were reasonable or unreasonable, they did not violate the Fourth Amendment because of their private character." (footnote omitted)); *cf. Hardin*, 539 F.3d at 418 (holding a private party acted as a government agent in conducting a search because the search was "without a doubt the officers' idea" and the officers had sent the private citizen to conduct the search (internal quotation marks omitted)).

The agents' subsequent viewing of what Valdez and McDowell "freely made available for [their] inspection did not violate the Fourth Amendment." *Jacobsen*, 466 U.S. at 119. Furthermore, based on Valdez's statements that the album contained child pornography, the agents were justified in opening the album to view the potentially incriminating evidence. *See id.* In doing so, the agents "learn[ed] nothing that had not previously been learned during the private search" and "infringed no legitimate expectation of privacy." *Id.* at 120.

To the extent that Bowers argues that Valdez or McDowell conducted a second "search" at the behest of law enforcement because either Valdez or McDowell reentered Bowers's bedroom to obtain the photograph album when the agents arrived, this claim is unsupported by the record. According to the testimony of the two agents, when they entered the house, the album was located on the dining room table, in a shared space, and

---

[1] Bowers highlights in his brief that there existed, at one point, conflicting stories surrounding how the photograph album was initially discovered in Bowers's room and whether it was McDowell, Valdez, or Garza who discovered it. Although the parties were not entirely forthcoming about the circumstances under which McDowell discovered the album, such inconsistencies and contradictions are irrelevant to our resolution of the search issue as it is plain that law-enforcement officers were entirely uninvolved in the initial discovery.

was readily visible.  Agent Taube, when asked, specifically denied asking Valdez or McDowell to obtain the album from a private space and testified several times that he "definitely did not direct [Valdez] to enter [Bowers's] room."  Taube Test., Hr'g Tr. of 9/10/07, at 30 (Doc. 63); *see also id.* at 33-34.  Agent Taube also stated that he believed that Valdez and McDowell remained in his sight from the time the agents entered the dwelling until the moment that he saw the album in the shared space and that he did not remember either party leaving the room to retrieve the album.  *Id.* at 30-31.  Agent Winterhalter's testimony confirmed the same.

Bowers attempts to attack the agents' testimony by asserting that McDowell initially had told an investigator with the Federal Public Defender's Office that McDowell had returned the album to Bowers's room and retrieved it again later at the agents' request.  At the suppression hearing, however, McDowell denied making this statement and indicated that the album "was laying on the dining room table" when the agents arrived.  McDowell Test., Hr'g Tr. of 10/10/07, at 10-11 (Doc. 64).[2]  Apparently confident that Bowers would be gone for the entire weekend, McDowell felt no need to return the incriminating evidence to Bowers's room in order to cover-up his snooping.

Because neither Valdez nor McDowell was acting as a government agent when they first discovered the album, the album was in a common area of the house when the agents arrived, and there is no evidence that the agents exceeded the scope of the initial private search, we conclude that the district court properly denied Bowers's motion to suppress.

**B.  As-Applied Challenge Fails Under the Commerce Clause**

Bowers next raises an as-applied challenge under the Commerce Clause to the constitutionality of 18 U.S.C. § 2251(a) and 18 U.S.C. § 2252(a)(4)(B), which prohibit the manufacture and possession of child pornography produced using materials that were

---

[2]Furthermore, Bowers's assertion that "Agent Taub [sic] specifically testified that he asked Valdez to get the photo album," Appellant Br. at 25, is a mischaracterization of Agent Taube's testimony. Taube actually stated, "We asked if we could see the album in question.  We walked into [the] dining room type area and they showed us the album."  Trial Tr. of 6/18/2008, at 269 (Doc. 67).

mailed, shipped, or transported in interstate or foreign commerce. *See* 18 U.S.C. §§ 2251(a); 2252(a)(4)(B). Bowers argues that because he produced and possessed child pornography for noncommercial reasons and the activity was wholly intrastate, the Government must establish that his individual actions substantially affected interstate commerce in order for the statutes to be applied constitutionally, which the Government has failed to do. Bowers relies on the Supreme Court's decisions in *United States v. Morrison*, 529 U.S. 598 (2000), and *United States v. Lopez*, 514 U.S. 549 (1995), as well as this Circuit's decision in *United States v. Corp*, 236 F.3d 325 (6th Cir. 2001), to support his argument. We review de novo a challenge to the constitutionality of a statute, *United States v. Rose*, 522 F.3d 710, 716 (6th Cir. 2008), and conclude that Bowers's as-applied challenge is without merit.

This Circuit has determined previously that in analyzing the as-applied constitutionality of child-pornography laws, the Supreme Court's analysis in *Raich* is controlling. *See United States v. Chambers*, 441 F.3d 438, 454 (6th Cir. 2006). In *Raich*, the Supreme Court reemphasized that "case law firmly establishes Congress'[s] power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." *Raich*, 545 U.S. at 17 (citing *Perez v. United States*, 402 U.S. 146, 151 (1971), and *Wickard v. Filburn*, 317 U.S. 111, 128-29 (1942)). The Court further indicated that, as *Wickard* established, "Congress can regulate purely intrastate activity that is not itself 'commercial,' in that it is not produced for sale, if it concludes that failure to regulate that class of activity would undercut the regulation of the interstate market in that commodity." *Id.* at 18. When the larger "general regulatory statute bears a substantial relation to commerce, the *de minimis* character of individual instances arising under that statute is of no consequence." *Id.* at 17 (internal quotation marks omitted).

Here, there is no question that Congress has a legitimate basis for attempting to regulate the interstate market in child pornography and that the statutes that Bowers challenges are part of a larger comprehensive scheme to regulate that illicit interstate market. *See United States v. Brown*, 327 F. App'x 526, 532-33 (6th Cir. 2006), *cert.*

*denied*, 549 U.S. 1273 (2007); *Chambers*, 441 F.3d at 455. In fact, Bowers does not contest Congress's power to enact comprehensive child-pornography laws generally. The question under *Raich*, then, as relevant to this case, is whether Congress had "a rational basis for concluding that leaving home-consumed [and produced child pornography] outside federal control would . . . affect price and market conditions" of the larger interstate market that Congress was authorized to regulate, thus allowing it to criminalize wholly intrastate activity as part of its larger comprehensive scheme. *Raich*, 545 U.S. at 19.

In *United States v. Chambers*, a panel of this court determined that Congress did have a rational basis for regulating possession of child pornography in 18 U.S.C. § 2254(a)(4)(B), and upheld that section as constitutional against an as-applied challenge. *Chambers*, 441 F.3d at 455 ("'Congress has a rational basis for believing that homegrown child pornography can feed the national market and stimulate demand.'" (quoting *United States v. Gann*, 160 F. App'x 466, 472 (6th Cir. 2005))); *see also Brown*, 327 F. App'x at 533. In *Chambers*, like here, "[t]he only evidence [that] the government [had] put forth in support of the interstate or foreign commerce connection was that the . . . film used was produced" out of state. *Chambers*, 441 F.3d at 451. We likewise conclude that Congress had a rational basis for believing that the failure to regulate the wholly intrastate production of child pornography, as it has done in 18 U.S.C. § 2251(a), would undermine equally its larger regulatory scheme. *See United States v. McCalla*, 545 F.3d 750, 755-56 (9th Cir. 2008), *cert. denied*, 129 S. Ct. 1363 (2009) (rejecting an as-applied challenge to a conviction under 18 U.S.C. § 2251(a) and refusing to "inquire into the specifics of [the defendant's] possession" because Congress rationally "conclude[d] that homegrown child pornography affects interstate commerce" (internal quotation marks omitted)).

As other Circuits have noted, much of *Raich*'s reasoning as to why Congress possesses the power to regulate wholly intrastate drug activity in the furtherance of its larger regulatory scheme applies with equal force to child pornography. *See McCalla*, 545 F.3d at 755; *United States v. Maxwell*, 446 F.3d 1210, 1216 (11th Cir.), *cert. denied*,

549 U.S. 1070 (2006); *United States v. Forrest*, 429 F.3d 73,78-79 (4th Cir. 2005); *United States v. Jeronimo-Bautista*, 425 F.3d 1266, 1272 (10th Cir. 2005), *cert. denied*, 547 U.S. 1069 (2006).  And Bowers's case is no different.  For example, even though Bowers claims that he was only interested in a particular type of child pornography—that involving his own child and her friends—and that he would not search for child pornography through other avenues or distribute his own, nonetheless Congress could have believed that even wholly intrastate production and possession involving a particular individual could be diverted eventually to the interstate market because of the high demand for child pornography on that market.[3]  *Raich*, 545 U.S. at 22; *Chambers*, 441 F.3d at 455.  Congress could have also desired to regulate intrastate child pornography because of the enforcement difficulties inherent in distinguishing intrastate and interstate action.  *Raich*, 545 U.S. at 22.

In sum, *Raich* indicates that Congress has the ability to regulate wholly intrastate manufacture and possession of child pornography, regardless of whether it was made or possessed for commercial purposes, that it rationally believes, if left unregulated in the aggregate, could work to undermine Congress's ability to regulate the larger interstate commercial activity.  *See Raich*, 545 U.S. at 22 ("[W]e have no difficulty concluding that Congress had a rational basis for believing that failure to regulate the intrastate *manufacture and possession* of marijuana would leave a gaping hole in the [Controlled Substances Act]." (emphasis added)); *see also Chambers*, 441 F.3d at 455.  The fact that the Government did not prove Bowers's individual conduct substantially affected interstate commerce is irrelevant.  *See Raich*, 545 U.S. at 23 ("Where the class of activities is regulated and that class is within the reach of federal power, the courts have no power to excise, as trivial, individual instances of the class." (internal quotation marks and alteration omitted)).  Bowers's as-applied challenge must fail. *See Chambers*, 441 F.3d at 455; *accord McCalla*, 545 F.3d at 756; *Maxwell*, 446 F.3d at 1218; *Forrest*, 429 F.3d at 79; *Jeronimo-Bautista*, 425 F.3d at 1273.

---

[3]The record also undercuts Bowers's claim of a "limited interest."  The evidence at trial established that he had taken photographs of three children in addition to his own daughter and that he had shown the photographs to "lots of people."

Despite the broad reach of *Raich*, Bowers argues that this panel still must employ the case-by-case analysis set forth in *Corp* to determine whether the activity in this case substantially affects interstate commerce. Bowers's argument is misplaced, and we take this opportunity to make clear that, after *Raich*, this court's decision in *Corp* is no longer good law. The panel in *Corp* relied on the Supreme Court's decisions in *Morrison* and *Lopez* to support its case-by-case analysis. *Corp*, 236 F.3d at 331-32. *Raich* makes clear, however, that *Lopez* and *Morrison* are no longer the controlling authorities in this type of as-applied challenge. *Raich*, 545 U.S. at 23; *see also Chambers*, 441 F.3d at 454. Moreover, as outlined above, given Congress's broad regulatory power in the child-pornography arena, as well as its rational belief that wholly intrastate, noncommercial activity affects the larger interstate commercial market, a case-by-case analysis as conducted in *Corp* would completely contradict the Supreme Court's emphasis in *Raich* that where Congress has the federal power to regulate a class of activities, "the courts have no power to excise, as trivial, individual instances of the class," *Raich*, 545 U.S. at 23 (internal quotation marks omitted), and the "*de minimis* character of individual instances arising under that statute is of no consequence," *id.* at 17 (internal quotation marks omitted).[4] *See also Maxwell*, 446 F.3d at 1215 n.5 ("[*Raich*] leaves some doubt as to whether, in the Commerce Clause context, an as-applied challenge may ever be sustained so long as Congress may constitutionally regulate the broader class of activities of which the intrastate activity is a part."). We cannot envision, after *Raich*, a circumstance under which an as-applied Commerce Clause challenge to a charge of child-pornography possession or production would be successful.

---

[4] Bowers is correct that no published opinion has held expressly that *Corp* is obsolete. He is also correct that, since *Raich*, several panels of this Circuit have cited *Corp* in cases involving as-applied challenges. *See Chambers*, 441 F.3d at 451-52; *United States v. Savoy*, 280 F. App'x 504, 508 (6th Cir.), *cert. denied*, 129 S. Ct. 742 (2008); *Brown*, 327 F. App'x at 532-33; *Gann*, 160 F. App'x at 471; *cf. United States v. Salazar*, 185 F. App'x 484, 487 (6th Cir.), *cert. denied*, 549 U.S. 1010 (2006) (noting without further discussion that "*Corp* predates the Supreme Court's recent decision in *Gonzales v. Raich*, 545 U.S. 1 (2005)"). Not one of those opinions, however, upholds an as-applied challenge applying *Corp*'s analysis and many distinguish *Corp* on its "unique" facts. We do not believe that mere citation or mention of *Corp* assures its continued viability, and as no published opinion has addressed directly the continuing validity of *Corp* post-*Raich*, we take this opportunity to make clear that *Corp* is no longer the law of the Circuit. *Salmi v. Sec. of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) ("[A] prior [panel] decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision . . .").

## III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.