RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0292P (6th Cir.)
File Name: 04a0292p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

No. 03-5088

LONNY J. ANDREWS,
*Defendant-Appellant.*

───────────────

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 02-00105—Karl S. Forester, Chief District Judge.

Submitted: March 10, 2004

Decided and Filed: September 2, 2004

Before: BOGGS, Chief Judge; DAUGHTREY, Circuit
Judge; ALDRICH, District Judge.[*]

───────────────

## COUNSEL

**ON BRIEF:** Richard R. Melville, PRATT & MELVILLE,
Lexington, Kentucky, for Appellant. Charles P. Wisdom, Jr.,

───────────────

[*] The Honorable Ann Aldrich, United States District Judge for the
Northern District of Ohio, sitting by designation.

Mark A. Wohlander, John Patrick Grant, ASSISTANT
UNITED STATES ATTORNEYS, Lexington, Kentucky, for
Appellee.

───────────────

## OPINION

───────────────

MARTHA CRAIG DAUGHTREY, Circuit Judge. The
defendant, Lonny Andrews, was convicted on 27 counts of a
28-count indictment that charged him with the production,
receipt, and possession of child pornography, in violation of
18 U.S.C. §§2251(b), 2252(a)(2), and 2252(a)(4)(B)
respectively. Under count 28, he was ordered to forfeit items
and equipment utilized in committing those offenses. On
appeal, he challenges only his convictions on the first two
counts, contending that §2251(b) is unconstitutional as
applied to him because the government failed to establish a
sufficient nexus between his alleged activities and interstate
or foreign commerce, thereby depriving the district court of
jurisdiction to try the case. He also argues that the district
court erred in permitting the introduction of certain
photographs. We find no basis on which to overturn the
jury's verdict and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The record in this case establishes that defendant Andrews
lived in a four-bedroom trailer in Nicholasville, Kentucky,
with his wife, his seven-year-old step-daughter, and the
couple's two-year-old daughter. In May 2002, his two nieces,
aged 12 and 16, came to Andrews's home from Alabama to
spend the summer. Apparently, the 16-year-old left the house
with the defendant's wife at various times, leaving Andrews
in the house with the other children. On one occasion, he
took advantage of their absence to show the seven-year-old
and the 12-year-old a "video of naked people" engaged in
sexual relations. After the two children watched the video,

Andrews told them that he wanted them to do similar things with him and forced his step-daughter to perform oral sex on him. At another time, Andrews showed the girls a picture of a "naked teenager" from his computer's "picture gallery," telling them that he had received the picture from a friend.

Andrews had purchased a small "pen camera" at Wal-Mart that he could use to produce photographs on his computer screen. Andrews taught his niece and step-daughter how to use the pen camera and, on two occasions, he told them to take pictures of each other's "privates" while they were naked. The first time, Andrews watched his niece take pictures of his step-daughter. After the girls took the pictures of each other, Andrews loaded the pictures into his computer's "picture gallery." These pictures could also be uploaded onto the Internet, although there was no evidence presented at trial that Andrews actually did so. Andrews frightened the two children into silence by threatening that "if [they] ever told on him that he – that he would go to jail and it would be all [their] fault and that he would beat [them]."

Nevertheless, the younger of the two nieces apparently confided in her older sister, who then told Andrews's wife, Stacy, that the 12-year-old had something to tell her. From her ensuing conversation with the 12-year-old, Stacy Andrews learned that her husband was making the two children take sexually explicit photos of each other with the pen camera. She contacted the local sheriff's office and filed a petition for an emergency protective order on behalf of the children. The order was granted and, as a result of its directive, Lonny Andrews was removed from the residence.

After the defendant's departure, the sheriff searched the trailer with Stacy's consent and seized various items, including the defendant's computer, some compact disks, hard disk drives, and the pen camera – all of which had been manufactured or acquired from out-of-state or abroad. During the search, a detective examined Andrews's computer there on the premises, opened some electronic files, and found

"visual depictions," each of which was described in the indictment as involving "a minor female engaged in the lascivious exhibition of her genitals or pubic area." The hard drive on Andrews's computer also contained 107 photographs of his niece and his step-daughter, mostly of the girls' genitals and buttocks, that Andrews had directed the girls to take of each other using his pen camera.

The detective found the pen camera attached to Andrews's computer. Nearby, he also found a compact disk containing over 200 pornographic images of unidentified prepubescent girls, defined as under the age of 12. Research verified that these images were available on the Internet and could be downloaded onto a disk using the disk "burner" found among the defendant's computer equipment. They appeared to have been downloaded from the Internet in December 1999 and January 2000. Once, in the fall of 2000, almost two years before the events at issue here took place, Stacy Andrews was using the computer and happened upon an image of a young, nude child. According to her testimony at trial, she told her husband to remove the image from the computer or she would "throw the computer out in the front yard."

Lonny Andrews testified at trial, denying that he had enticed his niece or his step-daughter to use his pen camera to take the pornographic photos. He also denied uploading their pictures onto the computer or the internet, or downloading the pornographic images of prepubescent girls onto the compact disk . Because the file on the compact disk was labeled "Jimmy," he argued that a friend of his named Jim must have downloaded the images while he was staying at the Andrews house. The jury nevertheless convicted the defendant on all 27 counts of the indictment, presumably finding that his testimony was not credible, and the district court imposed consecutive sentences totaling 405 years, pursuant to sentencing guidelines mandated by Congress as part of the Sex Crimes Against Children Prevention Act, and enhanced by a finding that Andrews had obstructed justice by testifying falsely at trial. The defendant now appeals only his

convictions for the production of child pornography in violation of 18 U.S.C. § 2251(b), as set out in counts one and two of the indictment.

### DISCUSSION

At the time of Andrews's trial, § 2251(b) provided as follows:

Any parent, legal guardian, or person having custody or control of a minor who knowingly permits such minor to engage in, or to assist any other person to engage in, sexually explicit conduct for the purpose of producing any visual depiction of such conduct shall be punished as provided under subsection (d) of this section, if such parent, legal guardian, or person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, **if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer,** or if such visual depiction has actually been transported in interstate or foreign commerce or mailed (emphasis added).

Federal jurisdiction over the offenses charged in counts one and two was based on the fact that Andrews purchased his computer from New Jersey and that the pen camera was made in China. Andrews does not argue that § 2251(b) is facially unconstitutional, instead contending that it is unconstitutional under the Commerce Clause as applied to him because his activities did not substantially relate to interstate commerce. Questions of federal jurisdiction are reviewed de novo by this court. *See United States v. Brown*, 276 F.3d 211, 214 (6th Cir. 2002), *cert. denied*, 535 U.S. 1079 (2002).

Andrews relies almost exclusively on our opinion in *United States v. Corp*, 236 F.3d 325 (6th Cir. 2001), to support his argument that § 2251(b) is unconstitutional as applied to the

facts of this case. Corp was a 23-year-old defendant who was prosecuted under 18 U.S.C. §2252(a)(4)(B) for possessing child pornography, consisting of photographs of his 17-year-old girlfriend and his 26-year-old wife engaged in consensual sexual activity. *Id.* at 326. Section 2252(a)(4)(B) provides that an offender will be punished if he or she

. . . knowingly possesses 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if--

(i)   the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

(ii)  such visual depiction is of such conduct[.]

Federal jurisdiction in *Corp* was alleged to arise from the fact that the photographic paper on which the pornography was produced had been manufactured out-of-state, specifically in Germany. *Corp*, 236 F.3d at 326. Corp argued that the statue was unconstitutional on its face and as applied in his case because it exceeded Congress's Commerce Clause powers. *Id.* at 327. In reviewing this claim, the *Corp* court applied the framework developed by the Supreme Court in *United States v. Lopez*, 514 U.S. 549 (1995) (striking down the Gun-Free School Zones Act because Congress exceeded its power under the Commerce Clause), and in *United States v. Morrison*, 529 U.S. 598 (2000) (striking down the civil remedy provision of the Violence Against Women Act as unconstitutional under the Commerce Clause), to hold that §2252(a)(4)(B) was facially constitutional. *See Corp*, 236 F.3d at 331-332. On the other hand, the court also held that because the defendant's activity was not substantially related to interstate commerce, the statute was unconstitutional as

applied to the facts in his case.   But in doing so, the court emphasized that those facts were unique and that Corp's conduct was not the type of activity that Congress had intended to prohibit:

Under the undisputed circumstances here, Corp was not involved, nor intended to be involved, in the distribution or sharing with others of the pictures in question. Sauntman [the seventeen-year-old] was not an "exploited child" nor a victim in any real and practical sense in this case. In the other cases that have addressed this issue, the courts were faced with the much more threatening situation where an adult was taking advantage of a much younger child or using the imagery for abusive or semi-commercial purposes . . . .

Corp was not alleged to be a pedophile nor was he alleged to have been illegally sexually involved with minors other than Sauntman, who was merely months away from reaching majority. Clearly, Corp was not the typical offender feared by Congress that would become addicted to pornography and perpetuate the industry via interstate connections. Under these circumstances, the government has failed to make a showing that Corp's sort of activity would substantially affect interstate commerce.

*Corp*, 236 F.3d at 332-33.

Moreover, the *Corp* opinion contains a suggestion that in future cases, courts should undertake the following examination in order to ensure that the jurisdictional reach of the statute is properly circumscribed:

Was the activity in this case related to explicit and graphic pictures of children engaged in sexual activity, particularly children about fourteen years of age or under, for commercial or exploitive purposes? Were there multiple children so pictured? Were the children

otherwise sexually abused? Was there a record that defendant repeatedly engaged in such conduct or other sexually abusive conduct with children? Did defendant move from place to place, or state to state, and repeatedly engage in production of such pictures of children? These questions are relevant to a determination on a case-by-case basis about whether the activity involved in a certain case had a substantial effect on commerce.

*Id.* at 333.

Although not all the *Corp* questions are pertinent here, an inquiry along the lines it suggests produces a stark distinction between the facts in *Corp* and the facts in this case. Andrews was clearly involved in exactly the type of child-exploitive and abusive behavior that Congress sought to prohibit in § 2251(b), using computer equipment that had been shipped in interstate commerce.   Andrews first forced two children aged 12 and under to watch sexually explicit photographs that presumably had been transmitted over interstate lines.   He then compelled them to engage in and to photograph similar sexually explicit behavior, undoubtedly for the purpose of transmitting those photographs in the same manner.[1]   The children were vulnerable not only because of their age but also because they were under his care and control at the time, and their cooperation was clearly the result of coercion and outright threats to their safety.   In addition, Andrews was in possession of several hundred pornographic photographs

---

[1]As the Second Circuit noted in *United States v. Holston*, 343 F.3d 83, 88-90 (2nd Cir. 2003), Congress has made legislative findings documenting that "there is an extensive commercial market in child pornography and that much of the material that feeds this market is 'homegrown,' that is, produced by amateur photographers . . . . Because much of the child pornography that concerned Congress is homegrown, untraceable, and enters the national market surreptitiously , we conclude that Congress, in an attempt to halt interstate trafficking, can prohibit local production that feeds the national market and stimulates demand, as this production substantially affects interstate commerce."

depicting unidentified children who appeared to be under the age of 12. As early as two years before his arrest on these charges, his wife had seen the pornographic image of a child on his computer.

Given the scope of the evidence in the record, we have no doubt that the government established a sufficient nexus between the activity described in the first two counts of the indictment and interstate commerce to establish jurisdiction in this case. We therefore find no merit to the defendant's argument that § 2251(b) was unconstitutional as applied to that activity.

Nor do we find reversible error in connection with the admission into evidence of Exhibit 4, which consisted of the sexually explicit photos of Andrews's seven-year-old step-daughter and his 12-year-old niece. Because Andrews did not object to the introduction of the photos at trial, we review the admission of the photos only for plain error.[2] *See United States v. Cowart*, 90 F.3d 154, 157 (6th Cir. 1996); FED. R. EVID. 103(d) ("Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court."). He complains that the detective who seized his computer tampered with the photos, based on the fact that the dates on some of the photographs had been altered when the files were examined at his home. However, there is no other evidence to suggest tampering, and the detective's testimony that he had not altered the photographs could have been discredited on cross-examination but was not. The jury clearly found credible the detective's testimony that no alteration had occurred. Without a timely objection and the production of some evidence to

---

[2]Although the defendant did not object to the introduction of Exhibit 4, he later moved for a judgment of acquittal based on the fact that "[t]he dates of downloading of some of the PenCam pictures on July the 11th and July 14th were after the defendant had been vacated from the residence, and the testimony was that he hadn't been back." The court denied the motion.

suggest that the photographs were unreliable, the district court cannot be charged with committing error in failing to intervene *sua sponte* to prevent their introduction into evidence, or in declining to order a new trial on the same basis.

## CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court in all respects.