NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a1002n.06
Filed: December 21, 2005

Case No. 04-5840

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| DORSEY GAWAYNE GANN, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |

**BEFORE: BOGGS, Chief Judge, BATCHELDER, Circuit Judge; GADOLA***, District Judge.**

   **PAUL V. GADOLA, District Judge.** Defendant-Appellant Dorsey Gawayne Gann pled guilty to one count of production of child pornography in violation of 18 U.S.C. § 2251(a) and one count of receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A). Before pleading guilty, Gann filed a motion to dismiss the production of child pornography charge, along with another such charge that was later dismissed pursuant to a plea agreement, arguing that the governing federal statute was unconstitutional as applied to him in this case. The district court denied the motion. Gann now appeals the district court's denial. Gann also appeals his sentence as an improper application of the federal sentencing guidelines. For the following reasons, we will AFFIRM the decisions of the district court.

---

   * The Honorable Paul V. Gadola, United States District Judge for the Eastern District of Michigan, sitting by designation.

Gann has three daughters: two by his current wife, Cindy Gann, and one by his former wife, Carmen Bragg. In the spring of 2002, Gann's daughter by his former wife ("JG") was sixteen years old, while his daughters by his current wife were ten years old ("AG"), and five years old.

Sometime in 1998 or 1999, Gann began sexually abusing his eldest daughter, JG, who was then twelve or thirteen years old and living with her father. The abuse continued until she was sixteen years old. Near JG's thirteenth birthday, Gann forced her to lie down on the couch and close her eyes. He then videotaped her as he undressed and fondled her. He coerced her cooperation by threatening to videotape her younger half-sisters if she refused. Gann later destroyed this videotape because the lighting was poor.

During July of 2001, Gann compelled JG into making a second videotape, again coercing her by threatening to videotape her half-sisters instead. JG agreed to be videotaped, but only if her father left the room. Gann provided lingerie and sex toys, which JG used to perform sexual acts in front of the videocamera after Gann had left the room.

In approximately June of 2002, Gann took sexually explicit, nude photographs of his middle daughter, AG, who was ten years old at the time. On July 3, 2002, JG got into an argument with her father regarding his attempts to get her to make a third video and an incident where Gann approached JG's seventeen-year-old friend to ask if he could photograph her breasts. After this argument, JG reported Gann's abuse to her mother, Carmen Bragg, who filed a report of sexual abuse with the Gallatin Police Department ("GPD").

During a search of Gann's home, GPD officers found videotapes, photographs, compact discs, and video and computer equipment. On Gann's computer hard drive or compact discs, police

found the second video of JG and the photographs of AG, along with twelve pornographic photographs of known children. One directory on Gann's computer contained over 1500 pornographic files. Of the hundreds of sexually explicit images found on Gann's computer and compact discs, most of them were of children. Defendant admitted to being addicted to child pornography, to using his daughters to produce child pornography (including videotaping JG and photographing AG), and to downloading child pornography from the Internet.

The computer used to receive and store the child pornography, the compact discs used to store the video of JG, the video camcorder used to videotape JG, and the digital camera used to photograph AG were all produced outside the state of Tennessee.

The child pornography of Gann's daughter was produced within Gann's Tennessee home. During the investigation and subsequent prosecution, no evidence was ever presented, nor stipulated to, that the images of Gann's daughters ever left his home, that Gann ever sold, traded, or distributed them, or that he ever intended to do so. There was no evidence that he sold, traded, or distributed the other child pornography in his possession.

On July 8, 2002, Gann pled guilty in state court to one count of aggravated sexual battery and two counts of sexual battery for the sexual abuse of his daughter JG that occurred between 1997 and 1998, when JG was twelve and thirteen years old.

On December 12, 2002, Gann was charged in a six-count federal indictment for the later incidents that occurred in 2001 and 2002, as follows:

Count 1: Production of Child Pornography in violation of 18 U.S.C. § 2251(a) (by videotaping his daughter JG).

Count 2: Production of Child Pornography in violation of 18 U.S.C. § 2251(a) (by photographing his daughter AG).

3

Count 3:     Receiving Child Pornography, in violation of 18 U.S.C. § 2252(a)(2)(A).

Count 4:     Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (by possessing images stored on materials which had traveled in interstate commerce).

Count 5:     Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (by possessing images which had traveled in interstate commerce).

Count 6:     Criminal Forfeiture, pursuant to 18 U.S.C. § 2253(a).

On September 25, 2003, Gann filed a motion to dismiss Counts 1 and 2 of the indictment, the charges dealing with production of child pornography. Gann argued that § 2251(a), which was enacted pursuant to Congress's authority under the Commerce Clause, was unconstitutional as applied to him because his production of child pornography using his daughters was intrastate and noneconomic, and, as a result, there was an insufficient nexus between his activities and interstate commerce. The district court denied Gann's motion.

On February 2, 2004, in accordance with a plea agreement with the Government, Gann entered a guilty plea to Count 2, production of child pornography involving daughter AG, and Count 3, receiving child pornography. In the agreement, Gann waived his right to appeal his sentence, but reserved the right to appeal the district court's denial of his motion to dismiss. The district court sentenced Gann to 210 months to run concurrent with his state sentence. The remaining counts were dismissed pursuant to the plea agreement.

**II.**

Gann appeals the ruling of the district court on his motion to dismiss Count 2 of the indictment, claiming that Count 2 is unconstitutional under the Commerce Clause as applied to him. The statute that Gann was charged with violating is as follows:

§ 2251. Sexual exploitation of children

4

(a) Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, **if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer**, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

18 U.S.C. § 2251(a) (emphasis added).

Federal jurisdiction of the charge against Gann is based upon the "materials-in-commerce" clause of this statute: "if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means." 18 U.S.C. § 2251(a). In the instant case, the materials used by Gann to take pictures and to videotape his daughters, such as the computer, compact disks, video camcorder, and digital camera, were all manufactured outside the state of Tennessee.

Gann does not contest the constitutionality of the statute on its face. Instead, Gann argues that the statute as applied to his particular situation is unconstitutional because Gann's activities do not substantially relate to interstate commerce. Such a constitutional challenge to a statute is reviewed *de novo*. *United States v. Smith*, 182 F.3d 452, 455 (6th Cir. 1999).

We have previously considered this question of the constitutionality of the child pornography statutes as applied to a defendant in two cases: *United States v. Corp*, 236 F.3d 325 (6th Cir. 2001), and *United States v. Andrews*, 383 F.3d 374 (6th Cir. 2004).[1] In *Corp*, we applied the framework

[1]While the defendant in the *Andrews* case was prosecuted under the same statute section as Gann, 18 U.S.C. § 2251, the defendant in *Corp* was prosecuted under a different but related child pornography statute, 18 U.S.C. § 2252(a)(4)(B). Both statutes contain a similar jurisdictional

5

for determining whether a statute exceeds the scope of the Commerce Clause power developed by the Supreme Court in *United States v. Lopez*, 514 U.S. 549 (1995) and *United States v. Morrison*, 529 U.S. 598 (2000). *Corp*, 236 F.3d at 331-32. We also stated that the issue of whether the child pornography statute is unconstitutional as applied to a particular defendant is determined by considering whether the defendant's activity was substantially related to interstate commerce. *Id*. at 332-33. In *Andrews*, we followed this same analysis by way of reliance on *Corp*. *Andrews,* 383 F.3d at 377-38.

In *Corp*, we recognized that the child pornography statute in question "facially has an extremely wide sweep." *Corp*, 236 F.3d at 331. Nevertheless, we chose not to declare the statute unconstitutional, instead choosing to assume "that the jurisdictional components of constitutional statutes are to be read as meaningful restrictions." *Id*. at 332. Thus, in *Corp*, we undertook an analysis to determine whether "Corp's activity was [] of a type demonstrated *substantially* to be connected or related to interstate commerce on the facts of the case." *Id*. To accomplish this we considered a set of questions "relevant to a determination on a case-by-case basis about whether the activity involved in a certain case had a substantial effect on commerce." *Id.* at 333. We repeated this list of questions when considering the defendant's actions in the *Andrews* case:

> Was the activity in this case related to explicit and graphic pictures of children engaged in sexual activity, particularly children about fourteen years of age or under, for commercial or exploitive purposes? Were there multiple children so pictured? Were the children otherwise sexually abused? Was there a record that defendant repeatedly engaged in such conduct or other sexually abusive conduct with children? Did defendant move from place to place, or state to state, and repeatedly

---

"materials-in-commerce" clause. Thus, in *Andrews*, we adopted the same framework that we used in *Corp* for determining the constitutionality of the relevant child pornography statute as applied to the particular actions of the defendant.

engage in production of such pictures of children?

*Andrews*, 383 F.3d at 378 (quoting *Corp*, 236 F.3d at 333).  We also noted in *Andrews* that when considering the actions of a defendant on a case-by-case basis, not all of the questions are necessarily pertinent.  *Andrews*, 383 F.3d at 378.

In *Corp*, the twenty-three-year-old defendant was not a pedophile.  *Corp*, 236 F.3d at 327. He took sexually explicit photographs of his twenty-six year-old wife and a seventeen-year-old friend engaged in consensual sexual activity.  The seventeen year-old minor was only a few months away from her birthday and from attaining the age of majority.  *Id*. at 326.  The pictures were not distributed or shown to others, and the female minor voluntarily posed for the photographs:

> Under the undisputed circumstances here, Corp was not involved, nor intended to be involved, in the distribution or sharing with others of the pictures in question. [The minor] was not an "exploited child" nor a victim in any real and practical sense in this case. In the other cases that have addressed this issue, the courts were faced with the much more threatening situation where an adult was taking advantage of a much younger child or using the imagery for abusive or semi-commercial purposes.

*Id.* at 332.  In *Corp*, neither was the minor coerced into being photographed, nor was the defendant "the typical offender feared by Congress that would become addicted to pornography and perpetuate the industry via interstate connections."  *Id*. at 333.  We concluded that there was an insufficient nexus between defendant's activity and interstate commerce such that the defendant's conduct did not substantially affect interstate commerce.  *Id*.

In *Andrews*, the defendant produced child pornography on two occasions by forcing his twelve-year-old niece and seven-year-old step-daughter to take nude pictures of their own genital areas with a "pen camera."  The defendant threatened the girls with beatings and told them that he would go to jail if they told anyone of what happened.  The defendant then loaded the pictures from the camera onto his computer.  Though the pictures could have been uploaded to the Internet, there

7

was no evidence given at trial that the defendant did so. *Andrews*, 383 F.3d at 375. Given the circumstances, we concluded that the government had sufficiently established a nexus between the production of the child pornography and interstate commerce:

> Andrews was clearly involved in exactly the type of child-exploitive and abusive behavior that Congress sought to prohibit in § 2251(b), using computer equipment that had been shipped in interstate commerce. Andrews first forced two children aged 12 and under to watch sexually explicit photographs that presumably had been transmitted over interstate lines. He then compelled them to engage in and to photograph similar sexually explicit behavior, undoubtedly for the purpose of transmitting those photographs in the same manner. The children were vulnerable not only because of their age but also because they were under his care and control at the time, and their cooperation was clearly the result of coercion and outright threats to their safety. In addition, Andrews was in possession of several hundred pornographic photographs depicting unidentified children who appeared to be under the age of 12. As early as two years before his arrest on these charges, his wife had seen the pornographic image of a child on his computer.

*Id.* at 378 (footnote omitted).

We conclude that the facts of the instant case are almost indistinguishable from those of *Andrews*. Similar to the defendant in *Andrews*, Gann took sexually explicit photographs and videotape of young girls under his care who were, in some cases, only ten and thirteen years of age. Gann also used coercive threats in order to obtain these pictures. Just as the defendant in *Andrews*, Gann "was clearly involved in exactly the type of child-exploitive and abusive behavior that Congress sought to prohibit." *Id.* The children abused by Gann were similar to those abused by the defendant in *Andrews*, "vulnerable not only because of their age but also because they were under his care and control at the time, and their cooperation was clearly the result of coercion." *Id.* Finally, the defendants in both cases had hundreds of pornographic photographs of children on their computers.

The defendant in *Corp*, on the other hand, photographed a minor who was only months away from reaching the age of majority and was not coerced, but voluntarily posed for the pictures. There was no evidence that the defendant in *Corp* was a pedophile or was sexually involved with any other minor. In contrast, because of his obvious, admitted addiction to child pornography and the abuse of his own children, we conclude that Gann is "the typical offender feared by Congress that would become addicted to pornography and perpetuate the industry via interstate connections." *Corp*, 236 F.3d at 333.

Gann argues that *Andrews* is inapplicable to his situation because the defendant in *Andrews* took the pornographic photographs "undoubtedly for the purpose of transmitting those photographs" over interstate lines. *Andrews*, 383 F.3d at 378. In support of this position in *Andrews*, we relied on legislative findings of Congress that much of the material in the commercial market in child pornography is "homegrown," and that, consequently, Congress "can prohibit local production that feeds the national market and stimulates demand, as this production substantially affects interstate commerce." *Id.* at 378 n.1 (quoting *United States v. Holston*, 343 F.3d, 83, 88-90 (2d Cir. 2003)). Gann argues that since there is no evidence in the record to show that he ever intended to sell, trade, or distribute the pornography that he produced, there is no indication that his actions ever affected interstate commerce.

A finding that the one producing the pornography must intend to place it into the stream of interstate commerce is not necessary. In the Supreme Court's recent decision of *Gonzales v. Raich*, _ U.S. _, 125 S. Ct. 2195 (2005), decided after the parties to this case submitted their appellate briefs, the Court held that the Necessary and Proper Clause, U.S. Const., Art. I, § 8, allows laws enacted pursuant to Congress's authority under the Commerce Clause "to prohibit the local

9

cultivation and use of marijuana in compliance with California law." *Id.* at 2198. The Supreme Court ruled that once "Congress decides that the 'total incidence' of a practice poses a threat to a national market, it may regulate the entire class." *Id.* at 2206. Moreover, "when 'a general regulatory statute bears a substantial relation to commerce, the *de minimis* character of individual instances arising under that statute is of no consequence.'" *Id.* (quoting *Lopez*, 514 U.S. at 558). In making its decision, the Court relied on *Wickard v. Filburn*, 317 U.S. 111 (1942): "*Wickard* thus establishes that Congress can regulate purely intrastate activity that is not itself 'commercial,' in that it is not produced for sale, if it concludes that failure to regulate that class of activity would undercut the regulation of the interstate market in that commodity." *Raich*, 125 S. Ct. at 2206. The Supreme Court stated that it "need not determine whether respondents' activities, taken in the aggregate, substantially affect interstate commerce in fact, but only whether a 'rational basis' exists for so concluding." *Id.* at 2208 (citing *Lopez*, 514 U.S. at 557). The Court went on to say that regulations such as the one at issue are "squarely within Congress' commerce power because production of the commodity meant for home consumption, be it wheat or marijuana, has a substantial effect on supply and demand in the national market for that commodity." *Id*. at 2207.

This analysis governs the instant case. Like the law at issue in *Raich*, 18 U.S.C. § 2251(a) is part of "comprehensive legislation to regulate the interstate market in a fungible commodity," viz., child pornography. *Id.* at 2209. We conclude that Congress has a rational basis for believing that "homegrown" child pornography can "feed[] the national market and stimulate[] demand." *See Andrews*, 383 F.3d at 378 n.1. Whether this general regulation of child pornography encompasses some purely intrastate activity is of "no moment." *See Raich*, 125 S. Ct. at 2209. Therefore, we

10

conclude that the child pornography statute, 18 U.S.C. § 2251(a), is not unconstitutional as applied to Gann.

### III.

Gann's sentence was an application of the United States Sentencing Guidelines using various enhancements based on judicially determined facts not found by the jury beyond a reasonable doubt. Gann is asking the Court to apply *United States v. Booker*, ___ U.S. ___, 125 S. Ct. 738 (2005) to his case. Gann further argues that because *Booker* found 18 U.S.C. § 3553(b)(1) to be unconstitutional, and because the statute under which he was sentenced, 18 U.S.C. § 3553(b)(2), is, in his words, "indistinguishable from the effect of 18 U.S.C. § 3553(b)(1)," then, "it follows that the District Court's application of § 3553(b)(2) to Gann is likewise unconstitutional." Thus, Gann asks this Court to excise § 3553(b)(2) from the Guidelines as *Booker* excised 3553(b)(1) and order Gann to be resentenced without enhancements.

The Government argues that Gann knowingly and intelligently waived his right to appeal his sentence on any ground. Gann counters that his waiver could not have been knowing because the plea agreement was entered into prior to *Blakely v. Washington*, 542 U.S. 296 (2004), and *Booker*. Nevertheless, such waivers have been held by the Sixth Circuit to be enforceable despite the novelty of *Booker*, *see United States v. Bradley*, 400 F.3d 459, 463-66 (6th Cir. 2005), and "the Court has explained that where developments in the law later expand a right that a defendant has waived in a plea agreement, the change in law does not suddenly make the plea involuntary or unknowing or otherwise undo its binding nature." *Id.* at 463.

11

Gann's waiver of his right to appeal his sentence was not involuntary or unknowing simply because *Booker* was decided after Gann waived his right. Therefore, we conclude that Gann's waiver is enforceable and precludes him from appealing his sentence as improper.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.