NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0813n.06
Filed: November 6, 2006

No. 05-3732

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

DAVID L. BROWN,

    Defendant-Appellant.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

Before: MARTIN and DAUGHTREY, Circuit Judges; and REEVES, District Judge.[*]

PER CURIAM. Defendant-Appellant David Brown pled guilty to two counts of receiving and one count of possessing child pornography. On appeal, Brown claims that the district court erred in denying his motion to dismiss and by imposing various enhancements to his sentence. For the reasons set forth below, we AFFIRM the denial of the motion to dismiss, VACATE Brown's sentence, and REMAND the case for re-sentencing.

## BACKGROUND

On May 21, 2003, authorities discovered that images of child pornography were being posted on the Internet from an account under the name of David L. Brown. Based on this

---

[*] The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

-1-

information, United States Customs agents executed a search warrant at the residence of David L. Brown in Cleveland, Ohio, on October 16, 2003. After being advised of his rights, Brown agreed to speak with the customs agents and admitted to downloading images of minors ages five- to seven-years-old from the Internet. On that same date, the customs agents seized from Brown's residence various computers, CDs, floppy disks, digital cameras, VHS tapes, child erotica books, and other miscellaneous documents and pictures.

The customs agents reviewed the hard drive from Brown's computer and found 195 saved images of child pornography involving the lascivious exhibition of the genitals of toddlers and infants. The customs agents also discovered 945 images of child pornography stored in the drive's unallocated space[1] which included images of toddlers involved in actual or simulated sexual intercourse. A review of the twelve CDs seized from Brown's residence revealed child pornography consisting of 1,323 jpg[2] files and 111 mpg[3] movie files. These files contained child pornography involving oral-genital, genital-genital and genital-anal sexual intercourse, masturbation, the lascivious exhibition of the genital-pubic area and bestiality involving pre-pubescent minors. In addition, some of the jpg files involved minors who appeared to be one-year-old or younger. The CDs also contained 144 images that had been downloaded from the

---

[1]    The "unallocated space" contains files that have been nominally "erased" using DOS and Windows commands but actually remain for potential future recovery.

[2]    "Joint Photographic Experts Group" or "jpg" is widely used on the Internet for the display of photographs.

[3]    "Moving Picture Experts Group" or "mpg" is the standard for compression and storage of motion video, particularly for videos available through the Internet.

Internet involving minors bathing or showering, and twenty-nine images involving minors on the toilet or urinating.

The customs agents also discovered images of Brown's identical twin step-granddaughters. Brown was the twins' legal guardian from November 29, 2001, to November 24, 2002. One of Brown's CDs contained images of the twins naked in the bathtub, on the toilet, and on his bed. In addition, a floppy disk seized from his residence contained six additional images of the twins which focused on their pubic areas. One of these images, which was created November 24, 2002, was entitled "DSC07049.jpg" and depicted one of the girls lying on her back, using her hands to spread open her vagina.

On January 7, 2004, customs agents conducted a second interview with Brown. At that time, he admitted downloading files from the Internet onto the twelve CDs. Agents showed Brown seventeen images which he admitted were of his twin step-granddaughters. He also admitted creating these images with a digital camera when the girls were approximately two-years-old. Further, Brown admitted making three mpg movie files of the girls while they were in the bathtub. On January 27, 2004, customs agents interviewed Brown a third time, inquiring specifically about the "DSC07049.jpg" image. Brown admitted to producing this image using a digital camera, which later analysis revealed was a Sony Cybershot.

Customs agents also discovered that one of Brown's CDs contained a series of captured shots of Brown's computer monitor which displayed a real-time video/text Internet chat known as "ICUii." These images were taken on October 4, 2003, and depicted a video chat between two individuals identified as "Kool Dude" and "Two for Fun." Forensic analysis revealed that

these images were taken with Brown's Sony Cybershot camera. Brown bears the tattoo "Mr. Kool."

On February 18, 2004, Brown was indicted on one count of producing child pornography in violation of 18 U.S.C. § 2251(b), two counts of receiving child pornography in violation of 18 U.S.C. § 2252(a)(2), and one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Subsequently, Brown filed a motion to dismiss the production of child pornography charge, alleging that 18 U.S.C. § 2251(b) was unconstitutional on its face and as applied. The district court denied the motion. On April 7, 2005, Brown entered into a plea agreement whereby the United States agreed to dismiss the possession charge. In exchange, Brown agreed to plead guilty to the remaining charges but reserved the right to appeal the denial of his motion to dismiss and his sentence.

## STANDARD OF REVIEW

This Court reviews challenges to the constitutionality of a statute *de novo*. *United States v. Sawyers*, 409 F.3d 732, 735 (6th Cir. 2005). In addition, when reviewing sentencing decisions, this court reviews a district court's factual findings for clear error, but reviews the court's conclusions of law *de novo*. *United States v. Hazelwood*, 398 F.3d 792, 795 (6th Cir. 2005) (citation omitted).

## DISCUSSION

**I.     Motion to Dismiss**

In appealing the district court's order denying the motion to dismiss the production of child pornography charge, Brown raises a facial and as-applied challenge to the constitutionality of 18 U.S.C. § 2251(b). This statutory section provides that:

> Any parent, legal guardian, or person having custody or control of a minor who knowingly permits such minor to engage in, or to assist any other person to engage in, sexually explicit conduct for the purpose of producing any visual depiction of such conduct shall be punished as provided under subsection (d) of this section, if such parent, legal guardian, or person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

18 U.S.C. § 2251(b).[4]

The statute was originally enacted as part of the Protection of Children Against Sexual Exploitation Act of 1977, codified at 18 U.S.C. §§ 2251 *et seq*. The Act is a broad regulatory scheme that prohibits the production, receipt, transmission, and possession of child pornography. The Act initially targeted production of child pornography but only if the pornographic depiction itself was transported in interstate commerce, or if the defendant knew, or should have known, that the depiction would be transported in interstate commerce. However, in 1998, Congress amended § 2251 by adding a new jurisdictional basis which allowed prosecution if the materials used to produce the depiction "have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer." Pub.L.No. 105-314, 201(a), 112 Stat. 2974,

---

[4]   The language of § 2251(b) was modified slightly in 2003. Inasmuch as Brown pled guilty to Count One of the indictment which charged him with production of child pornography between November 29, 2001, and November 24, 2002, the court applied the earlier version of § 2251(b).

2977 (1998) (codified at 18 U.S.C. § 2251(b)).  In *United States v. Holston*, 343 F.3d 83 (2nd

Cir. 2003), the Second Circuit discussed the purpose of the amendment, noting that:

> [t]he legislative history indicates two reasons for the amendment.  The first was
> to correct an anomaly between the analogous possession statutes, 18 U.S.C. §§
> 2252(a)(4)(B), 2252A(a)(4)(B) and 2252A(a)(5)(B), which contained equivalent
> jurisdictional language, and the production statute, § 2251, which, as originally
> enacted, did not.  The second was to extend the statute to cases where proof of the
> interstate transportation of the depictions, or proof of the pornographer's
> knowledge as to the interstate transportation was absent.

*Holston*, 243 F.3d at 86 (internal citations omitted).

### A.   Facial Challenge

Relying on the Supreme Court's decisions in *United States v. Lopez*, 514 U.S. 549 (1995),

and *United States v. Morrison*, 529 U.S. 598 (2000), Brown contends that § 2251(b) exceeds

Congress' authority under the Commerce Clause because private production of a sexually

explicit picture does not substantially affect interstate commerce.  In *Lopez*, the Supreme Court

identified the following three categories of activity that Congress is permitted to regulate under

its commerce power:

> (1) channels of interstate commerce; (2) instrumentalities of interstate commerce,
> or persons or things in interstate commerce, even though the threat may come
> only from intrastate activities; and (3) activities that substantially affect interstate
> commerce.

*See Lopez*, 514 U.S. at 558-59.  The Court analyzed the Gun Free School Zones Act of 1990

("GFSZA"), 18 U.S.C. § 922(q)(1)(A), under the third category (*i.e.*, activities that substantially

affect interstate commerce) and determined that the statute was unconstitutional.

In *Morrison*, the Court established what is now the controlling four-factor test for

determining whether a regulated activity "substantially affects" interstate commerce.  These

considerations are: (1) whether Congress made findings regarding the regulated activity's impact on interstate commerce; (2) whether the statute contains an "express jurisdictional element" that limits it reach; (3) whether the regulated activity is commercial/economic in nature; and (4) whether link between the prohibited activity and the effect on interstate commerce is attenuated. *Morrison*, 529 U.S. at 610-12.

In *Gonzales v. Raich*, 545 U.S. 1 (2005), the most recent case discussing "substantial effect on interstate commerce," the Supreme Court did not explicitly refer to or use the four considerations outlined in *Morrison* to analyze the constitutionality of the statute at issue. However, in *Raich,* the respondents were only challenging the constitutionality of the Controlled Substances Act ("CSA") "as applied" to the facts of the case. As noted by the majority in *Raich*, a facial challenge is distinct from an as-applied challenge and the distinction is pivotal. *Raich*, 545 U.S. at 23.

### 1. Congressional Findings

When Congress originally passed the Protection of Children Against Sexual Exploitation Act of 1977, codified at 18 U.S.C. § 2251, *et seq.*, it supported the legislation with findings indicating that child pornography had become a "highly organized, multimillion dollar industr[y] that operate[s] on a nationwide scale" and that "the sale and distribution of such pornographic materials are carried on to a substantial extent through the mails and other instrumentalities of interstate and foreign commerce." S. Rep. No. 95-438, at 5 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 40, 42-43. The legislative findings also provided that, "because of the vast

potential profits in child pornography"(*i.e.*, its low production and reproduction costs and high retail prices), the industry was "growing at a very rapid rate." *Id*. at 7, 1978 U.S.C.C.A.N. at 44.

Although the Congressional findings do not specifically discuss how intrastate production of child pornography affects the larger interstate pornography market, the Supreme Court has held that Congress is not required to make explicit findings before it regulates. After examining the legislative history of 18 U.S.C. § 2251(b), we agree with a number of other courts that have held that "Congress' explicit findings regarding the 'extensive national market in child pornography and the need to diminish that national market' support the contention that prohibiting the production of child pornography at the local level helps to further the Congressional goal." *See United States v. Jeronimo-Bautista*, 425 F.3d 1266, 1271 (10th Cir. 2005) (citing *United States v. Morales-de Jesus*, 372 F.3d 6, 12 (1st Cir. 2004)).

## 2. Express Jurisdictional Element

The next factor, whether the statute contains a jurisdictional element that limits its application, is met here. The statute provides, in relevant part, that:

> Any parent, legal guardian, or person having custody or control of a minor who knowingly permits such minor to engage in, or to assist any other person to engage in, sexually explicit conduct for the purpose of producing any visual depiction of such conduct shall be punished . . . *if that visual depiction was produced using material that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer*.

18 U.S.C. § 2251(b) (emphasis added). Courts have referred to this as the "materials in commerce" jurisdictional element.

In *United States v. Hoggard*, 254 F.3d 744 (8th Cir. 2001), the Eighth Circuit considered a facial challenge to § 2251(b) and concluded that the statute was constitutional. Distinguishing

-8-

§ 2251(b) from the statutes at issue in *Lopez* and *Morrison*, that court noted that the statute "contains an explicit jurisdictional nexus" which requires the government to prove "a concrete connection with interstate commerce," *i.e.*, to prove that the depiction was produced using materials that had been transported in interstate commerce. *Id*. at 746.

This circuit, however, has previously called into question the rationale adopted by the Eighth Circuit, finding that the jurisdictional "hook" in a statute, standing alone, will not ensure its constitutionality. In *United States v. Corp*, 236 F.3d 325 (6th Cir. 2001), this Court addressed a facial constitutional challenge to 18 U.S.C. § 2252(a)(4)(B), which makes it unlawful to possess child pornography. Although *Corp* involved a challenge to a different child pornography statute, both statutes contain the same jurisdictional nexus and, therefore, the Court's reasoning is instructive. The Court noted that:

> [a] hard and fast rule that the presence of a jurisdictional element automatically ensures the constitutionality of a statue ignores the fact that the connection between the activity regulated and the jurisdictional hook may be so attenuated as to fail to guarantee that the activity regulated has a substantial effect on interstate commerce.

*Id*. at 330-31 (citing *United States v. Rodia*, 194 F.3d 465, 472-73 (3rd Cir. 1999), *cert. denied*, 529 U.S. 1131 (2000)). Instead, in considering a facial challenge to a particular statute, the court should focus on "whether Congress had a rational basis for believing that [regulated activity] has a substantial effect on interstate commerce."

### 3. Regulation of an Economic Activity

In addition to the congressional findings discussed above which indicate that production of child pornography is an economic activity, a number of decisions from this Court have

acknowledged the interstate market for child pornography, noting that child pornography is an industry operating on a nationwide scale. *See, e.g., United States v. Chambers*, 441 F.3d 438 (6th Cir. 2006); *United States v. Andrews*, 383 F.3d 374 (6th Cir. 2004). Thus, it is clear that § 2251(b), which makes it unlawful to produce child pornography, is directed at an economic activity.

### 4. The Link Between Production of Child Pornography and Interstate Commerce

In *Raich*, the Supreme Court re-affirmed the principle that the Commerce Clause empowers Congress to regulate purely local intrastate activities so long as they are part of an "economic 'class of activities' that have a substantial effect on interstate commerce." *Raich*, 545 U.S. at 17 (citing *Perez v. United States*, 402 U.S. 146 (1971); *Wickard v. Filburn*, 317 U.S. 111, 128-29 (1942)). The Court held that Congress need only have a rational basis for concluding that local activities substantially affect interstate commerce. *Id*. at 22. The Court determined that, because the CSA regulated an economic class of activities and because Congress could rationally conclude that home-consumed marijuana could be drawn into (and thus affect) the interstate market, Congress could constitutionally prohibit the local possession and use of marijuana, even in instances that had only a de minimis impact on interstate commerce. *Id*. at 17-19.

In *United States v. Chambers*, 441 F.3d 438 (6th Cir. 2006), and *United States v. Gann*, 160 Fed. Appx. 466 (6th Cir. 2005), this Court acknowledged the similarities between the CSA and the child pornography statutes, noting that Congress has a need to regulate both the production and possession of drugs and the production and possession of child pornography.

-10-

*Chambers*, 441 F.3d at 454-55. In each instance, Congress is seeking to exercise its Commerce Clause authority to regulate "quintessentially economic" activities, *i.e.,* those involving the "production, distribution, and consumption of commodities." *Raich*, 545 U.S. at 25. While the regulated commodities differ, the distinction is immaterial.

We find, as we did in *Chambers*, that "Congress ha[s] a rational basis for concluding that homegrown child pornography can feed the national market and stimulate demand." We reject Brown's argument that the pornography in this case was "homegrown," and was, therefore, outside the reach of Congress. *Chambers*, 441 F.3d at 455. In short, "the fact that the pornography statutes encompass some purely intrastate activity is of 'no moment.'" *Id*. (citing *Raich*, 545 U.S. at 22). Having considered the factors outlined in *Morrison* and the effects of purely local production of child pornography on the national market for such materials, we conclude that Congress did not exceed its Commerce Clause power in enacting 18 U.S.C. § 2251(b). Therefore, Brown's facial challenge to the constitutionality of § 2251(b) fails.

### B. As-Applied Challenge

Brown has also challenged the constitutionality of § 2251(b) as-applied to the facts of this case. In *United States v. Andrews*, 383 F.3d 374 (6th Cir. 2004), this Court considered an as-applied challenge to the constitutionality of § 2251(b). In that case, Andrews produced child pornography by forcing his twelve-year-old niece and seven-year-old step-daughter to take nude pictures of their own genital areas with a "pen camera." Andrews loaded these pictures from the camera onto his computer, but there was no evidence that the pictures were uploaded to the Internet. In considering the constitutionality of § 2251(b), this Court noted that Andrews was

-11-

involved in precisely the type of child-exploitive behavior that Congress sought to prohibit when it passed § 2251(b).  Specifically, the court stated that:

> Andrews first forced two children aged 12 and under to watch sexually explicit photographs that presumably had been transmitted over interstate lines.  He then compelled them to engage in and to photograph similar sexually explicit behavior, undoubtedly for the purpose of transmitting those photographs in the same manner.  The children were vulnerable not only because of their age but also because they were under his care and control at the time, and their cooperation was clearly the result of coercion and outright threats to their safety.  In addition, Andrews was in possession of several hundred pornographic photographs depicting unidentified children who appeared to be under the age of 12.  As early as two years before his arrest on these charges, his wife had seen the pornographic image of a child on his computer [which had been shipped in interstate commerce].

*Id*. at 378.

Here, the facts are almost indistinguishable from those in *Andrews* and certainly involve the type of activity that Congress sought to prohibit through § 2251(b).  *See Gann*, 160 Fed. Appx. at 466 (also involving facts similar to those in *Andrews*).  As outlined above, Brown took photographs and videos of his approximately two-year-old step-granddaughters in various locations (*i.e.*, on his bed, on the toilet and in the bathtub).  Some of the photographs involved lascivious exhibition of the genitals.  Similar to the victims in *Andrews*, these children were vulnerable not only because of their young age but also because they were under Brown's care and control at the time the images were produced.  Similar to Andrews, Brown was in possession of hundreds of pornographic photographs depicting unidentified children on his computer.  Moreover, although it was not alleged that Brown had actually uploaded child pornography to the Internet, he admitted to doing so at the time he entered into his plea agreement.

-12-

Given the evidence contained in the record and the Supreme Court's holding in *Raich*, we conclude that there is a sufficient nexus between the activities described in Count One of the indictment and interstate commerce. Therefore, Brown's as-applied challenge also fails.

## II.     Sentencing Enhancements

Brown has also appealed his sentence. Specifically, he alleges that the district court erred in applying enhancements for the following specific offense characteristics: (1) exploiting more than one minor (U.S.S.G. § 2G2.1(c)(1)); (2) engaging in a pattern of activity involving the exploitation of a minor (U.S.S.G. § 2G2.2(b)(4)); and (3) engaging in a pattern of activity involving prohibited sexual conduct (U.S.S.G. § 4B1.5(b)(1)). Sentencing enhancements under the United States Sentencing Guidelines must be proven by a preponderance of evidence. *United States v. Mickens*, 453 F.3d 668, 673 (6th Cir. 2006). Therefore, on appeal, this Court must determine whether the district court's factual findings as they relate to the sentencing enhancements were supported by a preponderance of the evidence.

### A.     More than One Minor

Brown pled guilty to producing child pornography in violation of 18 U.S.C. § 2251(b). When calculating the sentence for a defendant convicted under this statute, U.S.S.G. § 2G2.1 provides that:

> If the offense involved the exploitation of more than one minor, Chapter Three, Part D (Multiple Counts) shall be applied as if the exploitation of each minor had been contained in a separate count of conviction.

U.S.S.G. § 2G2.1(c)(1). Thus, § 2G2.1(c)(1) requires the sentencing court to treat each exploited minor as though the exploitation of that minor was contained in a separate count of conviction.

While Brown does not object that U.S.S.G. § 2G2.1 is the proper Guideline to consider as to the production of child pornography charged in Count One, he argues that the district court erred in applying the enhancement because there was insufficient evidence demonstrating that he exploited more than one minor relative to Count One.

Initially, this Court notes that the government's comments at the sentencing hearing do not support Brown's contention that there was insufficient evidence to support application of the enhancement. In proper context, the government stated at the hearing:

> Judge, as far as how many twins were involved in the photos, as I've said to Mr. Fleming from the beginning, there were a variety of pictures in this case of both girls and indeed Mr. Brown admitted to the customs agent interviewing him he took pictures of his step-granddaughters. There's some images that I will characterize as borderline, depending as far as whether they display lascivious exhibition of genitals.

> There was one photo that was clearly in our mind that did display expedition [sic] of genitals that was which Count 1 was based. So as to that photo, I also indicated to Mr. Fleming it is true, we can't show that two girls were involved in the clear lascivious exhibition of genitals. There are a variety of photos, and the custom agent is here and she has them, if you want, as a fact finding to review the other photos and make a determination on your own, but as I indicated to Mr. Fleming, I couldn't confidently prove beyond a reasonable doubt that he had taken lascivious exhibition of genital photographs of both granddaughters.

[J.A. 102-103] Although the government conceded that only one photo was "clearly lascivious," it acknowledged that other depictions were "borderline." In addition, the government noted that there were *several* photos "focusing on the genitals." While the government indicated that it could not "confidently prove beyond a reasonable doubt" that Brown had taken lascivious photos of *both granddaughters*, at sentencing, the government need only prove a fact such as this by a preponderance of the evidence.

It is apparent that the district judge did not review any of the photographs prior to applying the enhancement under § 2G2.1(c)(1). Instead, he relied solely on the findings contained in the pre-sentence report and made inferences based on those findings. The parties have conceded that there was one photo which was clearly lascivious. However, that photo depicted only one minor. It is unclear based on the record before us whether there was evidence submitted by the government by which the court could have concluded that there was more than one minor victim. Therefore, Brown is entitled to a remand to allow the government to submit (and the court to fully consider) all evidence regarding the number of victims involved in the offense charged in Count One.

### B. Engaged in a Pattern of Activity Involving the Exploitation of a Minor

Brown also argues that the district court erred in enhancing his offense level under U.S.S.G. § 2G2.2(b)(4), which provides for a five-level increase "[i]f the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." U.S.S.G. § 2G2.2(b)(4). A "pattern of activity involving the sexual abuse or exploitation of a minor" is defined as:

> any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same or different victims; or (C) resulted in a conviction for such conduct.

U.S.S.G. § 2G2.2, cmt. n.1. Relying on the prior determination regarding application of § 2G2.1(c)(1) (*i.e.*, that more than one minor was exploited), the district court found that § 2G2.2(b)(4) applied because there was evidence indicating that both step-granddaughters were

abused. Brown, however, contends that the five level enhancement for a pattern of activity was not supported by a preponderance of the evidence.

On appeal, the government argues that the district court did not err in applying the § 2G2.2(b)(4) enhancement for a pattern of activity. First, the government states that the court properly determined that Brown victimized both twins, which is sufficient to demonstrate a pattern of activity. In the alternative, the government argues that, even if Brown only abused one twin, the abuse occurred over a period of time. Specifically, the government notes that, in his plea agreement, Brown agreed that,

> Between November 29, 2001 and November 24, 2002, at his home, in Cleveland, Ohio, Defendant permitted one or both of said twin girls to engage in sexually explicit conduct for the purpose of producing visual *depictions* of such conduct.

[J.A. 67] Finally, the government contends that, regardless of whether Brown exploited both twins, the district court properly found by a preponderance of the evidence that Brown exploited or abused minors on at least two occasions. The government notes that in addition to the evidence demonstrating that Brown sexually exploited at least one of his step-granddaughters, there is evidence that Brown was involved in the Internet sexual abuse of another minor.

In particular, the government notes that Brown's CDs contained a series of computer monitor shots. These images were taken on October 4, 2003, and depicted a video chat between two individuals using the names "Kool Dude" and "Two for Fun." During the communication, Kool Dude typed in the chat window, "[s]he looks sweet." Additionally, during the communication, the female toddler grabbed an adult penis and "Two for Fun" typed, "[s]he likes

-16-

to see your c (not readable)." Forensic analysis revealed that these images were taken with Brown's Sony Cybershot camera and that Brown bears the tattoo "Mr. Kool."

Having reviewed the record, there is sufficient evidence by which the district judge could have found by a preponderance of the evidence that Brown engaged in two or more separate instances of sexual abuse. The evidence shows that Brown exploited at least one of his step-granddaughters. In addition, the record contains evidence indicating that Brown was an active participant in a realtime chat with someone who was abusing a minor at the time. Viewing all of this evidence in its entirety, the district court did not err in applying § 2G2.2(b)(4).

### C.      Engaged in a Pattern of Activity Involving Prohibited Sexual Conduct

Brown also objects to the enhancement based on § 4B1.5(b)(1) for the same reasons articulated in his objection to the application of §§ 2G2.1(c)(1) and 2G2.2(b)(4). Specifically, he argues that district judge erred in applying § 4B1.5(b)(1), inasmuch as the evidence was insufficient to prove that he (1) engaged in a pattern of exploitation with either of his step-granddaughters or (2) was involved in the creation of the ICUii captures involving another minor.

> U.S.S.G. § 4B1.5(b)(1) provides that:
>
> In any case in which the defendant's instant offense of conviction is a covered sex crime . . . and the defendant engaged in a pattern of activity involving prohibited sexual conduct: (1) The offense level shall be 5 plus the offense level determined under Chapters Two and Three . . . ."

U.S.S.G. § 4B1.5(b)(1). Brown does not dispute that his conviction for production of child pornography in violation of 18 U.S.C. § 2251(b) constitutes a "covered sex crime," *see* U.S.S.G. § 4B1.5, cmt. n. 2(A)(ii), or that production of child pornography is "prohibited sexual conduct,"

*see* U.S.S.G. § 4B1.5, cmt. n. 4(A)(ii). However, he objects to the enhancement because he contends there was insufficient evidence to prove he engaged in a pattern of exploitation with either of his step-granddaughters or with the minor depicted on the monitor shots.

A "pattern of activity" for the purposes of § 4B1.5(b)(1) occurs when: (1) a defendant engages in the prohibited sexual conduct with a minor on at least two separate occasions, and (2) there were at least two minor victims. U.S.S.G. § 4B1.5, cmt. n. 4(B)(i). For the reasons discussed with respect to application of § 2G2.2(b)(4), this Court finds that the district court did not err in applying an enhancement under § 4B1.5(b), inasmuch as there was sufficient evidence in the record demonstrating that Brown sexually exploited at least one of his step-granddaughters and was an active participant in the ICUii incident in which another minor was abused. Therefore, we find that application of the enhancement was warranted.

## CONCLUSION

For the reasons discussed herein, we AFFIRM the denial of the motion to dismiss. However, we VACATE Brown's sentence and remand for re-sentencing to allow the district court to review and consider the evidence relevant to the enhancement under U.S.S.G. § 2G2.1. On remand, the district court should fully consider all evidence regarding whether the offense charged in Count One involved the exploitation of more than one minor.